# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DAVIS and GUADALUPE DAVIS,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PIONEER CREDIT RECOVERY, INC., et al.,<br><br>　　　　　　Defendants. | Case No. CV 11-1963-JEM<br><br>MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT |

## I. INTRODUCTION

On March 8, 2011, Plaintiffs Thomas Davis and Guadalupe Davis filed a complaint alleging that Defendant Pioneer Credit Recovery, Inc. violated certain provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and California's Rosenthal Act, Cal. Civil Code § 1788 et seq. ("Rosenthal Act"). On April 1, 2011, Defendant filed an Answer. The parties filed Statements of Consent to proceed before this Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On September 9, 2011, Defendant filed a Motion for Summary Judgment ("MSJ"). On October 4, 2011, Plaintiffs filed an Opposition. On October 11, 2011, Defendant filed a Reply.

On October 25, 2011, the Court ordered the parties to submit further briefing. On November 8, 2011, Defendant filed a Supplemental Reply. On November 22, 2011, Plaintiffs filed a Sur-Reply.

The matter is now ready for decision. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

**II.  PLAINTIFFS' COMPLAINT**

Plaintiffs allege the following in the Complaint:

**A.  Factual Allegations**

Plaintiff Thomas Davis ("T. Davis") incurred a financial obligation of $22,000 (the "Debt") to Sallie Mae (the "Creditor"). (Complaint ¶ 9.) The Debt was purchased, assigned or transferred to Defendant for collection, or Defendant was employed by the Creditor to collect the Debt. (Id. ¶ 11.)

Defendant, through its employees, engaged in the following illegal tactics in order to collect the Debt: placed calls to Plaintiff[1] three times a day up to five days a week for several weeks; used deceptive tactics and tried to collect a debt that had been discharged in a bankruptcy; called Plaintiff's place of employment on three separate occasions, despite being told to stop; threatened Plaintiff with garnishment of his wages, but no such action has taken place; threatened Plaintiff with legal action, but no such action has taken place; threatened Plaintiff with a lien on his Social Security; refused to repeat their names when asked to identify themselves; failed to identify themselves when speaking with Plaintiffs and did not include a warning stating that the call was an attempt to collect a debt; and continued calling after Plaintiff sent a cease and desist letter. (Complaint ¶¶13-21.)

**B.  FDCPA Violations**

Based on the foregoing actions, Plaintiffs allege that Defendant violated the FDCPA, as follows:

a.   informing a third party of Plaintiff's debt (15 U.S.C. § 1692(b));

---

[1] The Complaint repeatedly refers to "the Plaintiff" without indicating whether the reference is to Thomas Davis or Guadalupe Davis.

|    |    |    |
|---|---|---|
| b. | contacting third parties regarding Plaintiff's debt (15 U.S.C. § 1692b(3)); |
| c. | contacting Plaintiff post cease and desist notification (15 U.S.C. § 1692c(c)); |
| d. | employing false and deceptive means to collect a debt (15 U.S.C. § 1692e(10)); |
| e. | contacting Plaintiff at a place and time known to be inconvenient (15 U.S.C. § 1692c(a)(1)); |
| f. | contacting Plaintiff at his place of employment with knowledge such communication was prohibited (15 U.S.C. § 1692c(a)(1)); |
| g. | using profane and abusive language (15 U.S.C. § 1692d(2)); |
| h. | causing the phone to ring repeatedly and engaging Plaintiff in telephone conversations with intent to annoy and harass (15 U.S.C. § 1692d(5)); |
| i. | failing to disclose the identity of the debt collection agency (15 U.S.C. § 1692d(6)); |
| j. | threatening wage garnishment (15 U.S.C. § 1692e(4)); |
| k. | threatening to take legal action without actually intending to do so (15 U.S.C. § 1692e(5)); |
| l. | failing to inform the consumer that the communication was one seeking to collect a debt (15 U.S.C. § 1692e(11)); |
| m | continuing collection efforts when the debt was not verified (15 U.S.C. § 1692g(b)). |

(Complaint ¶¶ 26-38.)

**C.   Rosenthal Act Violations**

Plaintiffs also allege the following violations of the Rosenthal Act:

a. using obscene and profane language (Cal. Civ. Code § 1788.11(a));

b. failing to disclose the identity of the debt collection agency (Cal. Civ. Code § 1788.11(b));

c. causing the phone to ring repeatedly and to engage Plaintiff in continuous conversations with an intent to annoy (Cal. Civ. Code § 1788.11(d));

3

|   |   |   |
|---|---|---|
| d. | communicating with such frequency as to be considered harassment (Cal. Civ. Code 1788.11(e)); |
| e. | false representation that the consumer debt could be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not be added legally to the existing obligation (Cal. Civ. Code § 1788.13(e)); |
| f. | communicating with Plaintiff's employer regarding the debt without the consent of Plaintiff or Plaintiff's counsel (Cal. Civ. Code § 1788.12(a)); |
| g. | falsely representing that a legal proceeding had been or was about to be instituted if the debt was not paid immediately (Cal. Civ. Code § 1788.13(j)); |
| h. | failure to comply with the FDCPA, 15 U.S.C. § 1692 (Cal. Civ. Code § 1788.17). |

(Complaint ¶¶ 42-51.)

## III. FINDINGS OF FACT

The Court makes the following findings of fact. The facts set forth below are undisputed, unless otherwise noted. To the extent that there is a dispute between Plaintiffs and Defendant as to a material fact, the Court has drawn all reasonable inferences in Plaintiffs' favor.[2]

T. Davis obtained two student loans from Bony Trust Company as ELT for USA GROUP, loan account number ending 0503, with an outstanding balance of $17,777.50 ("Loan 1"), and loan account number ending 0504 with an outstanding balance of

---

[2] On October 4, 2011, Plaintiffs filed an "Objection to Evidence Submitted by Declaration of Jason Webb" ("Plaintiffs' Evidentiary Objection"), in which Plaintiffs object to particular portions of the Declaration of Jason Webb in Support of Defendant's Motion for Summary Judgment. On October 11, 2011, Defendant filed an "Objection to and Motion to Strike Inadmissible Evidence Contained in Declaration of Lara Shapiro in Support of Defendant's Opposition to Motion for Summary Judgment" ("Defendant's Evidentiary Objection"), in which Defendant objects to the Declaration of Lara Shapiro in its entirety, including attached exhibits. Plaintiffs' Evidentiary Objection and Defendant's Evidentiary Objection are sustained.

$20,969.46 ("Loan 2") (collectively, "Loans"). (Declaration of Jason Webb in Support of Defendant's Supplemental Reply ("Webb Decl. III") ¶ 5.)

Both loans were jointly issued to T. Davis on December 24, 1999, upon the execution of a Loan Consolidation Application and Promissory Note ("Note") on or about November 12, 1999, by which T. Davis consolidated previously issued student loans. (Id. ¶ 5-6, Ex. 1.) There is only one Note for both Loans. (Id. ¶ 7.)

The Loans were issued to T. Davis and the payoff amounts were sent directly to the previous loan creditors (Sallie Mae) by the new consolidation loans' creditor in or about December 1999 pursuant to the executed Note. (Id. ¶ 9, Ex. 1.)

The Note states that the Borrower (T. Davis) ". . . will not sign this note before reading it, including the terms which continue on the reverse side . . ." (Id. ¶ 10, Ex. 1, p. 1), and that by signing the Note, "I acknowledge I understand the conditions stated on both sides, and have received an exact copy and agree to hereof." (Id. ¶ 10, Exh. 1, p.1.)

The terms on the reverse side of the Note indicate repeatedly that the consolidation loans to be issued on the Note are federally guaranteed student loans. (Id. ¶ 11, Exh. 1, p.2.) The terms on the reverse side are entitled "Additional Terms of the Promissory Note for a Federal Consolidation Loan." (Id. ¶ 12, Exh. 1, p.2.) The terms state:

1. "I understand that my SLS/ALAS Loans may be refinanced at the current annual variable rate as determined by the Secretary of the United States Department of Education (hereinafter called the Secretary) in accordance with the Higher Education Act of 1965, as amended (hereinafter called the Act) as a part of this consolidation. In addition I hereby authorize my creditors . . . to release . . . for purposes of verifying student loan information in order that I may consolidate my student loans pursuant to the Act." (Id. ¶ 17, Exh. 1, p.1.)

2. "If any of my SLS (formerly called Student PLUS or ALAS) Loans are to be consolidated they will first be refinanced at the current annual rate as determined by the Secretary and authorized by the Act, if that rate is lower than my current fixed rate, and then be immediately consolidated into this

5

loan. I will not receive any separate documentation evidencing refinanced loans." (Id. ¶ 13, Exh. 1, p.2.)

3. "The terms of this loan will be interpreted in accordance with the Higher Education Act of 1965, as amended." (Id. ¶ 14, Exh. 1, p.2.)

4. "I understand that my status as an eligible Borrower under this Loan Consolidation Program under Section 428C of the Act . . . ." (Id., ¶ 15, Exh. 1, p.2.)

5. "Notice to Borrower: By your signature on the other side of this application and promissory note you are agreeing to the above terms and certification." (Id., ¶ 16, Exh. 1, p.2.)

T. Davis also executed a "Loan Consolidation Verification Certificate" ("Certificate") on or about November 12, 1999. (Webb Decl. III ¶ 18, Exh. 2.) The Certificate is signed by T. Davis and states, in pertinent part: "Dear Creditor: I hereby authorize you to release any information concerning my student loans to USA Group Loan Services, Inc. . . . Your prompt reply and cooperation will help to expedite my Federal Consolidation Loan. Thank you." (Id. ¶ 19, Exh. 2.)

There is no evidence that these loans have been consolidated further.

Plaintiff Guadalupe Davis ("G. Davis") is not a signatory on the Note nor is she even listed as a reference on the Note.

A review of the public docket indicates that G. Davis individually obtained a discharge in a Chapter 7 bankruptcy proceeding on October 5, 2007, in Central District of California Case No. 1:07-bk-11996-MT (Docket No. 12). Although Plaintiff lists Sallie Mae as a creditor for her husband's student loan in the amount of $20,000 (Docket No. 1, p.18), the discharge specifically states that "[d]ebts for most student loans" are not discharged in a Chapter 7 bankruptcy case (Docket No. 12, p.2). The docket indicates that G. Davis did not file an adversary complaint or otherwise seek a ruling from the bankruptcy court to have any student loan discharged.

|   |   |
|---|---|
| 1 | T. Davis has defaulted on the Loans.  United Student Aid Funds, Inc. ("USA Funds") |
| 2 | placed the Loans with Defendant for collection and handling on June 13, 2010.  (Webb Decl. |
| 3 | III ¶¶ 3, 20.) |
| 4 | In their Opposition to the MSJ, Plaintiffs specifically concede, and the Court finds |
| 5 | based on the competent evidence presented: |
| 6 | Defendant's call logs show Defendant never spoke to Plaintiffs by telephone. |
| 7 | (Plaintiffs' Statement of Genuine Disputes of Material Fact ("Statement of Genuine Issues" ¶ |
| 8 | 5.) |
| 9 | Defendant's calls to Plaintiffs were not answered and no in person contact was ever |
| 10 | made. (Id. ¶ 6.) |
| 11 | Defendant's call logs show no phone calls right back after a hang up by Plaintiffs. |
| 12 | (Id. ¶ 7.) |
| 13 | There were no third party contacts by Defendant.  (Id. ¶ 8.) |
| 14 | Defendant's call logs show all calls were generated during acceptable times.  (Id. ¶ |
| 15 | 9.) |
| 16 | Defendant's call logs show a total of 27 calls placed in a period of 232 days.  (Id. ¶ |
| 17 | 10.) |
| 18 | Defendant has sought and imposed an administrative wage garnishment on Plaintiff |
| 19 | T. Davis's wages.  (Id. ¶ 11.) |
| 20 | Defendant received Plaintiffs' cease and desist letter on August 2, 2010.  (Id. ¶ 12.) |
| 21 | Defendant's last call attempt to Plaintiffs occurred on July 31, 2010.  (Id. ¶ 13.) |
| 22 | The call logs submitted by Defendant documenting all calls to Plaintiffs list five phone |
| 23 | numbers.  (Declaration of Jason Webb in Support of MSJ ("Webb Decl. I"), Exh. 1.)  In their |
| 24 | declarations submitted along with their Sur-Reply, Plaintiffs claim that two of the five phone |
| 25 | numbers do not and never have belonged to them ((661) 263-2540 and (661) 297-6038). |
| 26 | Plaintiffs also indicate that the phone number (661) 518-9432 did not belong to them, but |
| 27 | that number is not listed on the call log.  Plaintiffs do not state whether the other three |
| 28 | numbers on the call log, (661) 513-9432, (661) 296-3652 or (661) 613-0530, belong to |

1 them, although T. Davis does list four other telephone numbers that he "can recall since
2 having any loans with Sallie Mae." (Declaration of T. Davis ("T. Davis Decl.") ¶¶ 2, 5;
3 Declaration of G. Davis ("G. Davis Decl.") ¶ 2.)

4 T. Davis states that, prior to sending the cease and desist letter and while attempting
5 to negotiate a payment, he provided Defendant with his "contact phone number," but that
6 the call logs "do not list any calls to my contact number." (T. Davis Decl. ¶ 3.) T. Davis
7 never actually states that he received calls from Defendant to his "contact phone number,"
8 nor does he identify that number, nor does he state facts indicating that any such calls were
9 in violation of the FDCPA or the Rosenthal Act.

10 G. Davis states: "On numerous occasions, prior to sending the Defendant a Cease
11 and Desist letter, I received calls at my place of employment from this Defendant.
12 Additionally, during the time prior to the Cease and Desist letter to the Defendant, the
13 Defendant did call us at our home." (G. Davis Decl. ¶ 3.) G. Davis further states: "The call
14 logs provided by the Defendant do not list any calls to my work number, although I did
15 speak with the Defendant more than once, however I am unable to recall the exact dates of
16 the calls to my place of employment, and did not take contemporaneous notes. I am also
17 unable to retrieve any phone records from my place of employment." (G. Davis Decl. ¶ 4.)

18 Despite what G. Davis may be attempting to imply, she never states that she actually
19 spoke to Defendant's representative on her work phone. She states that she "received
20 calls" at her place of employment, but she does not state that she actually spoke to
21 Defendant's representative or that the calls were "received" on her work phone. She does
22 not state that she told Defendant's representative that he or she was calling her at work or
23 that calls to her work were prohibited. At best, G. Davis can recall "more than one" call from
24 Defendant "at [her] place of employment" before the cease and desist letter was sent.

25 Thus, there is no evidence that Defendant: informed a third party of Plaintiff's debt;
26 contacted a third party regarding Plaintiffs' debt; contacted Plaintiffs post cease and desist
27 notification; employed false and deceptive means to collect a debt; contacted Plaintiffs at a
28 place and time known to be inconvenient; contacted Plaintiffs at place of employment with

knowledge such communication was prohibited; used profane or abusive language; caused the phone to ring repeatedly and engaged Plaintiffs in telephone conversations with the intent to annoy and harass; failed to disclose the identity of the debt collection agency; threatened wage garnishment without intending to do so; threatened to take legal action without intending to actually do so; failed to inform Plaintiffs that the communication was one seeking to collect a debt; or continued collection efforts when the debt was not verified; or made a false representation that the consumer debt could be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges could not be added legally to the existing obligation.

## IV. LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Material facts are those that affect the outcome of the case. Anderson, 477 U.S. at 248; Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court does not weigh the evidence, but only determines if there is a genuine issue for trial. Menotti v. City of Seattle, 409 F.3d 1113, 1120 (9th Cir. 2005).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party presents sufficient evidence or argument to support the motion, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Id. at 324; see also Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). The nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting former Rule 56(e)); see also Rule 56(c); Anderson, 477 U.S. at 257.

Conclusory allegations are insufficient to withstand a motion for summary judgment, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted); accord Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1183 (9th Cir. 2005). With respect to an issue for which the opposing party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.")).

**V.  ANALYSIS**

In their Opposition to the MSJ, Plaintiffs contend that the only triable issue of fact is whether or not the underlying loans were discharged in G. Davis's bankruptcy and, therefore, whether Defendant improperly attempted to collect on a discharged loan in violation of 15 U.S.C. § 1692e(10) (employing false and deceptive means to collect a debt). Plaintiffs essentially concede that they have no evidence to support the other claims set forth in the Complaint for various violations of the FDCPA or the Rosenthal Act, and the Court finds none.

Plaintiffs initially contended in their Opposition that the Loans were "trade school loans" issued for T. Davis to attend a non-accredited law school. Plaintiffs further asserted that loans to a non-accredited school could not be federally guaranteed student loans and, therefore, the loans to T. Davis were discharged in G. Davis's bankruptcy. There is no authority for this argument. Moreover, the evidence submitted by Defendant in support of their Supplemental Reply, specifically the Note and Certificate, clearly establishes that the

Loans were federally guaranteed student loans issued to T. Davis in 1999 to consolidate prior student loans under the Federal Consolidation Loan Program.

Consolidation loans made under the Federal Consolidation Loan Program, which was created by the Higher Education Act, are guaranteed by the Secretary of the Department of Education. 34 C.F.R. § 682.100(b)(2)(i) ("The Secretary guarantees lenders against losses . . . [w]ithin the Consolidation Loan Program, on loans made under the Federal Consolidation Loan Program."). Thus, it cannot be disputed that the Loans are federally guaranteed student loans.

In their Sur-Reply, Plaintiffs now state that the Loans actually were obtained for T. Davis's undergraduate studies and one year of graduate studies in psychology and theology, and were not for T. Davis's law school studies. Thus, Plaintiffs apparently concede – as they must – that the Loans were federally guaranteed student loans and drop their unsupported "trade school loan" argument.

Plaintiffs' argument that the Loans were discharged in G. Davis's bankruptcy is likewise without merit. "[S]tudent loan obligations are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)." In re Rifino, 245 F.3d 1083, 1087 (9th Cir. 2001). A debtor may not discharge a "loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," "an obligation to repay funds received as an educational benefit," or "any other educational loan that is a qualified education loan under [I.R.C. § 221(d)(1)]" absent a showing by the debtor that the debt imposes "undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). In order to discharge federally guaranteed student loans in a Chapter 7 bankruptcy proceeding, the debtor must file an adversary complaint or otherwise seek a ruling from the bankruptcy court that the student loans should be discharged because of undue hardship. See Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 451-52 (2004); see also Brown v. U.S. Dept. of Educ., 231 Fed. Appx. 688, at *1 (9th Cir. 2007).

The docket of G. Davis's bankruptcy shows that no adversary complaint was filed and no ruling was obtained from the bankruptcy court specifically discharging any student loans. Because the Loans were not discharged in bankruptcy, Defendant did not violate 15 U.S.C. § 1692e(10) (employing false and deceptive means to collect a debt) in attempting to collect payment on the Loans.

**VI. DISPOSITION**

Defendant has met its burden to demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs shall take nothing, and the Complaint is dismissed with prejudice.

IT IS SO ORDERED.

DATED: January 3, 2012            */s/ John E. McDermott*
                                  JOHN E. MCDERMOTT
                                  UNITED STATES MAGISTRATE JUDGE